# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **JOSE LUIS LOMELI VENEGAS ET AL** | **CASE NO. 3:21-CV-03269 LEAD** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **AMAZON.COM INC ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM ORDER

Pending before the Court is a Motion for Summary Judgment [Doc. No. 288] filed by Defendant, Amazon Logistics, Inc., and Amazon.com, Inc., (collectively, "Amazon"). Plaintiff, Edith Reynoso-Gonzales ("Gonzales"), opposes the Motion [Doc. No. 318]. Amazon filed a reply [Doc. No. 335].

For the following reasons, Amazon's Motion is **DENIED**.

### I.  Background

This suit stems from a multi-vehicle crash that occurred on October 16, 2020, on Interstate 20 in Madison Parish, Louisiana.[1] Defendant, Dilshod Abdurasulov ("Abdurasulov"), drove his 2019 Volvo Tractor for MJS Enterprise, Inc. ("MJS"), hauling a 2020 HYTR Trailer (jointly, the "Rig"), owned by Amazon.[2] MJS and Abdurasulov operated the Rig under contract for Amazon.[3] The Rig collided with the car driven by Gonzales' husband, Jose Venegas ("Venegas"), thrusting it onto another lane where it struck another eighteen-wheeler, which in-turn killed Venegas.[4]

---

[1] [Doc. No. 94, at ¶ C-1].
[2] [Id. at ¶¶ C-3, F-1].
[3] [Doc. No. 288-1, p. 8].
[4] [Doc. No. 94, at ¶¶ C-8, C-12].

Gonzales filed this suit in the Sixth Judicial Court in Madison Parish, Louisiana.[5] Amazon removed the suit to this Court, citing diversity jurisdiction.[6] Amazon, in this Motion, argues that the Federal Aviation Administration Authorization Act's (the "FAAAA") provision in 49 U.S.C. § 14501(c)(1) preempts Gonzales from raising "state law personal injury claims against Amazon."[7]

The parties have briefed all relevant issues, and the matter is ripe.

## II. Law and Analysis

### A. Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

---

[5] [Doc. No 1-2].
[6] [Doc. No. 1].
[7] [Doc. No. 288, p. 1].

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249 (1986) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In diversity cases, the forum state's (here, Louisiana) substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). But federal law axiomatically "controls the interpretation of federal statutes and regulations." *Brown v. United States*, 890 F.2d 1329, 1341 (5th Cir. 1989).

### B. FAAAA Preemption

Federal preemption doctrine stems from Article VI of the federal Constitution, which makes the Constitution, and federal law enacted pursuant to it, the "supreme Law of the Land." U.S. Const. art. VI, cl. 2. As such, courts may not "give effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015). There are three forms of preemption: express preemption, field preemption, and conflict preemption. *Simmons v. Sabine River Auth. Louisiana*, 732 F.3d 469, 473 (5th Cir. 2013) (citation omitted). This case involves express preemption since the FAAAA explicitly says what States may and may not do "with respect to" motor carriers, brokers, or freight forwarders. 49 U.S.C. § 14501(c)(1).

Section 14501(c), by its terms, provides that a State

> may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier, . . . motor private carrier, broker, or freight forwarder with respect to the transportation of property.

*Id.* It then lists several exceptions. *See id.* § 14501(c)(2)–(5). Relevant here, is the so-called "safety exception" in § 14501(c)(2)(A), which provides that the express preemption in § 14501(c)(1) shall not restrict:

- The safety regulatory authority of a State with respect to motor vehicles,
- The authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or
- The authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

*Id.* § 14501(c)(2)(A).

Amazon interprets these statutory provisions to conclude Gonzales' vicarious liability claims against Amazon are preempted.[8] The Court agrees.

### 1. Amazon's Classification

First, the Court must determine whether Amazon is a "shipper" or a "broker." Amazon interchangeably refers to itself using both terms in its filings before the Court.[9] Gonzales emphatically avers that Amazon is a shipper and not a broker.[10]

The Court now resolves all doubt: Amazon is a shipper and not a broker under the FAAAA. The FAAAA defines a broker as

> a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

*Id.* § 13102(2). The FAAAA does not define "shipper," so the Court turns to dictionaries, which define shippers as "Someone who ships goods to another. Someone who contracts with a carrier for the transportation of cargo." *Shipper*, Black's Law Dictionary (12th ed. 2024).

Here, Amazon is contracting with carriers to transport cargo that it is shipping to another—its customers. Amazon does not fall under the FAAAA's definition of broker as it is not (1) selling, (2) offering for sale, (3) negotiating, or (4) otherwise holding itself out as selling, providing, or arranging transportation by motor carrier for compensation. As such, Amazon is a shipper.

---

[8] [Id.].
[9] [Doc. No. 288-1, pp. 10, 23].
[10] [Doc. No. 315, pp. 9, 11].

But § 14501(c)(1) is not inapplicable solely because Amazon is a shipper. As the Supreme Court held in *Rowe v. New Hampshire Motor Transp. Ass'n*, even state laws that tell "*shippers* what to choose rather than *carriers* what to do" may be preempted if they effect the services provided by carriers. 552 U.S. 364, 372 (2008).

### 2. Applicability of § 14501(c)(1) Preemption

As always, the Court's analysis starts—and ends—with § 14501(c)(1)'s text,[11] which "contains the best evidence of Congress' pre-emptive intent." *Dan's City Used Cars v. Pelkey*, 569 U.S. 251, 260 (2013). In the preemption context, the Supreme Court interpreted § 14501(c)'s prohibition on state laws "related to" broker services to have a "broad preemptive purpose." *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (interpreting an identical provision of the Airline Deregulation Act ("ADA")); *see also Rowe*, 552 U.S. at 370–71 (applying *Morales*' interpretations of the ADA to the FAAAA). To be "related to" broker services, a state law only needs to have a "connection with, or reference to" these services. *Rowe*, 552 U.S. at 370 (quoting *Morales*, 504 U.S. at 384). Even state laws with "only indirect" effects on broker services may be preempted, but not state laws with merely a "tenuous, remote, or peripheral" effect. *Id.* at 370–71 (quoting *Morales*, 504 U.S. at 386, 390).

---

[11] Amazon informed the Court that the Fifth Circuit has not ruled on this issue and has stayed a case that would address this issue due to an intervening grant of *certiorari* by the Supreme Court. [Doc. Nos. 310; 337]. As such, there is no Fifth Circuit precedent on-point. Parties cite cases from other circuits, but these are non-binding. *See generally* [Doc. Nos. 288-1; 318].

Parties also cite to the FAAAA's legislative history. [Doc. Nos. 288-1, pp. 13–19; 318, pp. 12–16]. The Court resists the temptation to indulge. The "problems with legislative history are well rehearsed." *Wooden v. United States*, 595 U.S. 360, 381 (2022) (Barrett, J., concurring). Using legislative history is like "entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring). When interpreting legislation, "we aspire to be 'a nation of laws, not of men.' This means (1) giving effect to the text that lawmakers have adopted and that the people are entitled to rely on, and (2) giving *no* effect to lawmakers' unenacted desires." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 29 (2012).

Relying on *Morales* and *Rowe*, courts have fashioned a two-part test that parties seeking to establish preemption must show. *See Farfan v. Old Dominion Freight Line, Inc.*, 744 F. Supp. 3d 763, 767 (S.D. Tex. 2024). First, Amazon must show that a State enacted or attempted to enforce a law. *See id.* Second, that law must relate to broker or carrier rates, routes, or services either by expressly referring to them, or by having a significant economic effect on them. *See id.*

Gonzales brings her vicarious liability, negligent hiring, and negligent retention claims against Amazon under the Louisiana Civil Code's tort regime. *See* LA. CIV. CODE ANN. arts. 2317, 2320 (2025). These tort claims are undoubtedly enacted by the State, so Amazon easily meets prong one.

The Court must now determine whether the Louisiana law, that Gonzales' claims are based on, expressly refers to or has a significant economic effect on carrier or broker services. Nothing in Louisiana tort law expressly refers to broker or carrier services. *See id.* Therefore, the Court narrows its focus to whether the provisions have a significant economic impact on carrier or broker services.

Gonzales argues Amazon negligently selected and continued to retain MJS and Abdurasulov.[12] As a shipper, Amazon seeks services from carriers and brokers. Gonzales' claims strike the heart of such services. Tort law imposes a legal duty where one does not naturally exist. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 542 (1992)). And that those who breach said duties are legally liable. *See id.*

---

[12] [Doc. No. 362, at ¶¶ F-2, F-4].

Now, shippers like Amazon will take extra care when selecting brokers and carriers for their shipments. The brokers and carriers will in-turn take extra care when hiring and selecting drivers if they wish to receive shipping contracts and stay in business. All this conformity with tort-based duties, however, comes at a monetary cost. And non-conformity results in an alternative cost—damages. Thus, even though applying Louisiana's tort law here tells "*shippers* what to choose rather than *carriers* what to do," it, nevertheless, has a significant economic effect on services provided by brokers and carriers. *Rowe*, 552 U.S. at 372. As such, Gonzales' tort claims against Amazon are "related to" broker services and therefore, likely preempted.

### 3. Applicability of the "safety exception"

Even though the Court concludes Gonzales' claim are preempted, they may nevertheless be saved if they fall within the many exceptions to § 14501(c)(1) that are listed in the rest of § 14501(c). The parties focus on the first clause of the "safety exception," which states that § 14501(c)(1) "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). To fall within the "safety exception," Gonzales' claims must be (1) part of Louisiana's "safety regulatory authority" and (2) "with respect to motor vehicles."

A law is within "the safety regulatory authority of a State" when it is "genuinely responsive to safety concerns." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 442 (2002). Louisiana's vicarious liability and negligent hiring or retention claims easily satisfy this test. Such claims require employers take reasonable care to ensure others are not injured by their employees' actions. So, Gonzales' claims are within Louisiana's "safety regulatory authority." *Id.*

The parties disagree on whether Gonzales' claims satisfy the second prong. Amazon argues Gonzales' claims are not "with respect to motor vehicles" because the Supreme Court narrowly construed that language elsewhere in the FAAAA.[13] Gonzales rebuts, arguing Amazon's interpretation of the FAAAA contravenes the presumption against preemption,[14] and Fifth Circuit precedents that "rejected expansive readings of FAAAA preemption over traditional state tort law."[15]

The Court again starts with the FAAAA's text, which defines "motor vehicle" as a "vehicle, machine, tractor, trailer, or semitrailer . . . used on a highway in transportation." 49 U.S.C. § 13102(16). In *Pelkey*, the Supreme Court construed "with respect to," in § 14501(c)(1) of the FAAAA, to mean "concern[s]." 569 U.S. at 261. And it is a basic "rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012) (citation modified). So, the safety exception applies to state laws "concerning" motor vehicle safety. *Pelkey*, 569 U.S. at 261.

Dictionaries define "concern" as "to relate to"; "be about"; "to have an influence on"; or "involve." *Concern*, Merriam-Webster (last visited Dec. 27, 2025).[16] Some courts have narrowly construed "concern" in the safety exception to require a "direct connection" between a state law and motor vehicle safety. *See Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1271 (11th Cir. 2023); *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 462 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 564 (2024).

---

[13] [Doc. No. 288-1, p. 27 (citing *Pelkey*, 569 U.S. at 261)].
[14] [Doc. No. 318, p. 15 (citing *Ours Garage*, 536 U.S. at 432)].
[15] [Id. at p. 18 (citing *VRC LLC v. City of Dallas*, 460 F.3d 607, 608 (5th Cir. 2006))].
[16] https://www.merriam-webster.com/dictionary/concern

Others have not. *See Cox v. Total Quality Logistics, Inc.*, 142 F.4th 847, 857 (6th Cir. 2025) ("There is, however, good reason to doubt that the safety exception requires a *direct* connection to motor vehicles. The word 'direct' does not appear in the statute's text. And as mentioned above, 'with respect to' means 'concerns.' The verb 'concern' means 'to have to do with *or relate to.*' In *Morales*, the Court reasoned that the ordinary meaning of 'relating to' is a broad one. And both *Morales* and *Rowe*, further reasoned that a state law may 'relate to' a particular subject (like broker rates, routes, and services) even if a state law's effect is only indirect.") (citation modified).

Both interpretations are highly persuasive and well-reasoned. But the Court finds *Cox* more persuasive for two reasons. First, *Cox* fairly traces the definition of "with respect to" with words the Supreme Court has already interpreted—"related to." *See id.* When the Supreme Court wrestled with "related to" in the FAAAA, it construed the phrase to not require a direct connection. *See Morales*, 504 U.S. at 386; *Rowe*, 552 U.S. at 370. And, as stated earlier, "identical words used in different parts of the same act are intended to have the same meaning." *Taniguchi*, 566 U.S. at 571.

Second, it is a venerable rule of judicial restraint that "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." *CTS Corp. v. Waldburger*, 573 U.S. 1, 19 (2014) (citation omitted). This approach is "consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Id.* Here, the FAAAA can be fairly construed either way, so the Court breaks the tie in favor of the statutory construction "that disfavors pre-emption." *Id.*

Accordingly, the Court concludes that under the safety exception, a state law is "with respect to motor vehicle safety" if it is related to, involves, or has an influence on the safety of motor vehicles. 49 U.S.C. § 14501(c)(2)(A).

Back to Gonzales' claims. Louisiana's negligent hiring, negligent retention, and vicarious liability torts relate to motor vehicle safety. True, the relationship between a shipper like Amazon and motor vehicle safety will usually be fairly indirect. *See Ye*, 74 F.4th at 461. But Gonzales' claims need not be directly connected to motor vehicle safety. Rather, she only needs to show they are related to, involve, or have an influence on motor vehicle safety.

Gonzales' complaint states Amazon was negligent "by failing to make a reasonable inquiry" on "the competence of . . . any driver" who may transport Amazon trailers.[17] In other words, she argues Amazon negligently hired Alion Logistics, Inc., who then sub-contracted with MJS, who in turn used Abdurasulov.[18] Finding a broker who negligently hired, retained, and selected a driver with a poor record has an influence on motor vehicle safety as it will prevent other brokers from engaging in similar conduct or risk becoming legally liable. The same goes for shippers who hire, retain, and employ brokers that use drivers with poor records. Furthermore, finding brokers and shippers vicariously liable when their drivers are involved in vehicular accidents ensures that said entities take better care to avoid such accidents in the future. As such, Gonzales' claims have an influence on motor vehicle safety.

---

[17] [Doc. No. 94, at ¶ H-3(a)].
[18] [Doc. No. 288-1, p. 8].

Accordingly, the Court holds that while Gonzales' vicarious liability, negligent hiring, and negligent retention claims are "related to broker services" under § 14501(c)(1), they are within "the safety regulatory authority of a State with respect to motor vehicles" under § 14501(c)(2)(A) and, therefore, exempt from preemption.

### III. Conclusion

For these reasons,

**IT IS ORDERED** that Amazon's Motion for Summary Judgment [Doc. No. 288] is **DENIED**.

MONROE, LOUISIANA, this 29th day of December 2025.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE